**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MOWLID MOHAMED ABDILLAHI,<br><br>Petitioner,<br><br>v.<br><br>MATTHEW PUTRA, Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement, et al.,<br><br>Respondents. | Case No. 1:26-CV-366<br><br>Judge Michael R. Barrett<br><br>**OPINION & ORDER** |

Petitioner Mowlid Mohamed Abdillahi, currently detained at the Butler County Jail on behalf of Immigration and Customs Enforcement ("ICE"), seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (Doc. 1). Following two rounds of briefing, the Court held a hearing on September 1, 2026, to consider the arguments and supplemental filings of the parties. For the following reasons, the writ will issue.

## I. FACTUAL BACKGROUND

Petitioner, a native of Somalia, arrived in the United States as a refugee in 1991 at the age of seven. (Doc. 1, PageID 14). The following year, the Immigration and Naturalization Service granted him status as a lawful permanent resident. (*Id.*, PageID 16). But Petitioner lost that status in 2007 after he was convicted of second-degree armed robbery in California. (*Id.*, PageID 19). And following Petitioner's prison term for that felony conviction, the Department of Homeland Security ("DHS") initiated removal proceedings against him. (*Id.*).

In 2010, an Immigration Judge ("IJ") determined that DHS had established Petitioner's removability by clear and convincing evidence. Although Petitioner's aggravated felony conviction precluded him from establishing eligibility for asylum or withholding of removal, the IJ found that Petitioner "would appear to be an individual targeted for apprehension and likely torture upon his return to Somalia," and had therefore met the "heavy burden" of showing an entitlement to relief under the United Nations Convention Against Torture. Accordingly, the IJ granted deferral of removal to Somalia, but ordered that Petitioner be removed to Kenya, where he had spent time in a refugee camp as a child prior to arriving in the United States. (*Id.*, PageID 28-38). Petitioner sought review before the Board of Immigration Appeals, but later withdrew his appeal. (*Id.*, PageID 41).

Shortly after the IJ's order of removal and ICE's application to the Kenyan government, the Kenyan Consul General in Los Angeles informed ICE officials that Petitioner "will not be permitted to enter Kenya." (*Id.*, PageID 43). Petitioner was then released from custody and placed under an order of supervision ("OSUP") that required him, among other things, to report regularly to an ICE office. (*Id.*, PageID 44-47). Petitioner asserts that, since his release, he "has worked hard to build a productive life for him and his family in the United States." (*Id.*, PageID 4). Petitioner married a U.S. citizen and has three children, as well as a fourth on the way. He is involved in his community and serves as a "mentor for at-risk youth in the Columbus Somali community to avoid criminal legal involvement and pursue education." (*Id.*).

On April 4, 2026, Petitioner was arrested by ICE agents and transferred to the Butler County Jail. Petitioner asserts that the agents did so without a warrant, and that "DHS did not make, document, or communicate an individualized determination" with respect to his supervision status, and that agents "informed him that his detention is 'just punishment.'" (*Id.*, PageID 4). He contends that his arrest was unlawful and his ongoing detention is not authorized by 8 U.S.C. § 1231. Furthermore, Petitioner argues that his is entitled to release because his removal is not reasonably foreseeable. (*Id.*, PageID 5). He seeks declaratory relief and immediate release from custody, as well as fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.

For their part, Respondents argue that "Petitioner was taken into custody on April 4, 2026 in order to effectuate his removal," and that "[t]here are no known institutional barriers preventing ICE from removing Petitioner from a third country" or doing so "in the reasonably foreseeable future." (Doc. 7, PageID 103-04). Respondents acknowledged that the notice revoking Petitioner's OSUP said that ICE was seeking a travel document to Kenya, but asserted that ICE was "currently working to facilitate Petitioner's removal to a third country." (*Id.*, PageID 104).

## II. LEGAL STANDARDS AND APPLICATION

### A. Jurisdiction

As a threshold matter, district courts possess the authority to grant a writ of habeas corpus to any petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Relevant here, "[a]lthough the

court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Deng Chol A. v. Barr*, 455 F.Supp.3d 896, 901 (D. Minn. 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)).

Respondents assert that Petitioner is impermissibly seeking review of the execution of his final order of removal, and that the Court is therefore deprived of jurisdiction by 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g). But as the Court has repeatedly concluded, "[t]heir argument is not persuasive" because "federal district judges retain jurisdiction under § 2241 to review habeas claims by noncitizen detainees . . . rais[ing] legal questions regarding the government's statutory authority to detain them." *Ortiz Gutierrez v. Raycraft*, 821 F.Supp.3d 934, 938-39 (S.D. Ohio 2026) (collecting cases). Petitioner is challenging the "underlying legal bases" of ICE's actions, and the Court is therefore properly vested with jurisdiction. *See, e.g.*, *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (reiterating that § 1252(g) is not a "general jurisdictional limitation" on "all claims arising from deportation proceedings").

**B. Revocation of Supervision**

The detention of noncitizens under final orders of removal is governed by 8 U.S.C. § 1231, which provides a ninety-day window after an order of removal during which the Attorney General is to effectuate that removal. But if the individual is not removed within that period, they "shall be subject to supervision." *Id.* § 1231(a)(3).

As relevant here, supervision may be revoked if ICE finds a "significant likelihood" of removal "in the reasonably foreseeable future" and that the determination is "on account of changed circumstances." 8 C.F.R. § 241.13(i)(2). In such a case, the noncitizen "will be notified of the reasons for revocation of his or her release," and ICE "will conduct an initial informal interview . . . to afford [them] an opportunity to respond to the reasons for revocation stated in the notification." Notably, "[t]he revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination of whether the facts as determined warrant revocation and further denial of release." *Id.* § 241.13(i)(3).

Respondents' primary argument—that "Petitioner was lawfully arrested and detained in order to execute his final order of removal"—is fundamentally flawed. The record reflects that ICE agents took Petitioner into custody on April 4, 2026. Petitioner asserts that he was arrested on his way to work that morning, and officers did not present a warrant or revocation. (Doc. 1, PageID 4). Respondents have not specified the time of arrest, and state only generally that "Petitioner's OSUP was properly revoked pursuant to 8 C.F.R. § 241.13(i)." (Doc 18, PageID 319).

The officer who served the OSUP revocation notes that he did so at 11:50 a.m. on April 4. That document purported to revoke supervision because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future," and promised an "informal interview" on the same day at which Petitioner would "be given an opportunity to respond to the reasons for this

revocation." (Doc. 7, PageID 142). Curiously, the official who allegedly authorized the revocation did not do so until April 14, ten days later.[1] (*Id.*, PageID 143).

In any event, the record is totally devoid of evidence that ICE made a changed-circumstances determination *before* Petitioner was detained. Aside from the cursory and general assertion in the revocation notice, in fact, there is no evidence whatsoever that ICE even attempted to secure travel documents to Kenya at any point after the country rejected Petitioner sixteen years ago. Respondents still cannot point to a changed circumstance that would have permitted the revocation of Petitioner's OSUP, and appear to express only an aspiration that removal is significantly likely in the reasonably foreseeable future.[2] *See Roble v. Bondi*, 803 F.Supp.3d 766, 772 (D. Minn. 2025) (noting that a Petitioner has the ultimate burden of showing an entitlement to habeas relief, but "the regulations at issue . . . place the burden on ICE to first establish changed circumstances that make removal significantly likely in the foreseeable future.").

Because "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal," the Court finds that ICE violated 8 C.F.R. § 241.13(i)(2). *Sarail A. v. Bondi*, 803 F.Supp.3d 775, 780 (D. Minn. 2025). And even if an informal interview occurred, Petitioner could not have meaningfully responded or submitted evidence in opposition to reasons that were never given,

[1] Even if that discrepancy was a mere clerical error and the notice was actually signed by the authorizing agent on April 4, the conclusory nature of the notice and lack of sufficient individualized findings speak volumes.

[2] After two rounds of briefing and a hearing, Respondents still have not provided individualized assurances by any third country, nor have they allowed Petitioner to be heard in the proper venue on the issue of credible fear.

thereby violating his due process rights and § 241.13(i)(3). *See id.* Consequently, Petitioner's detention is unlawful and he is entitled to habeas relief.[3] *See, e.g.*, *Van Nguyen v. Hyde*, 788 F.Supp.3d 144, 152-53 (D. Mass. 2025).

## III. LEGAL STANDARDS AND APPLICATION

For the foregoing reasons, the petition, (Doc. 1), is **GRANTED**, and Respondents' emergency motion to vacate, (Doc. 13), is **DENIED** as moot. Respondents are **ORDERED** to **immediately release** Petitioner from custody, subject to the conditions of his preexisting OSUP.[4]

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett
United States District Judge

[3] Because relief can be granted on the grounds enumerated, the Court declines to reach the remainder of Petitioner's claims.

[4] Furthermore, Respondents must comply fully with 8 C.F.R. §§ 241.4(l) and 241.13(i), and all other governing laws and regulations. The Court acknowledges that Respondents retain authority to effectuate properly authorized removal, but reminds Respondents that they may not remove Petitioner to a third country without true notice and an opportunity to be heard on any fear of persecution or torture he may have.